■ JACQUES J. KATZ, Respondent, v CARL M. SIROTY, Appellant.—In an action, inter alia, to recover the value of legal services rendered, defendant appeals from an order of the Supreme Court, Kings County, dated September 10, 1976, which denied his motion to change the venue of the action from Kings County to Westchester County. By order dated June 20, 1977, this court remitted the action to Special Term to hear and report on the question of plaintiff's residence and the appeal has been held in abeyance in the interim (Katz v Siroty, 58 AD2d 620). Special Term, has complied and filed a report in accordance therewith, in which it found that (1) plaintiff's testimony on the issue of his claimed (second) residence in Kings County was evasive and unconvincing and (2) his principal residence is clearly his home in Scarsdale, where he lives with his wife and in which he maintains his office. Order reversed, with costs, and motion granted. CPLR 503 (subd [a]) provides, inter alia, that an action, with certain exceptions not applicable here, shall be tried in the county in which one of the parties resided when it was commenced and that a person having a residence in more than one county shall be deemed to be a resident of either. At the hearing held pursuant to this court's remand, testimony was adduced from plaintiff that although he owns a home jointly with his wife in Scarsdale, Westchester County, in which they have lived for more than 20 years, he retains the exclusive use of a bedroom in his sister and brother-in-law's home in Brooklyn, which he furnished for himself in 1944 or 1945, shortly after returning from military service. He has his own key to the house in Brooklyn, sometimes receives mail there and has the use of the telephone. However, plaintiff conceded that his two children, now 30 and 27 years of age, respectively, attended public school in Scarsdale, he is a registered

voter in Scarsdale and, although he professed to have a second law office at Park Place, Manhattan, in his brother-in-law's office, he admitted not having filed a New York City income tax return during the previous five years, because all of his earnings came from outside the city during that period. He also stated that for the past 8 or 10 years he has filed his income tax returns as a resident of Scarsdale. With respect to the extent of his use of the bedroom at the Brooklyn address, plaintiff indicated that it was a place where he occasionally stayed, either when he visited his Manhattan law office or when he had to see people in localities such as Patchogue, Long Island. Neither he nor his sister were able to estimate with any degree of certitude how often he stayed there. Plaintiff "guessed" that he slept at the Brooklyn address between 50 and 100 times a year. In our opinion, plaintiff's occasional use of the bedroom in his sister and brother-in-law's home when he transacts business in the New York metropolitan area does not support his contention that he has a second residence in Brooklyn. Although a person may have more than one residence for venue purposes (CPLR 503, subd [a]), to consider a place as such, he must stay there for some time and have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency *(Hammerman v Louis Watch Co.,* 7 AD2d 817, 818; cf. *Fromkin v Loehmann's Hewlett,* 16 Misc 2d 117). Residence requires more stability than a brief sojourn for business, social or recreational activities (cf. *Oelkers v Hulseberg,* 200 Misc 352, affd 279 App Div 669). The mere fact that plaintiff uses the Brooklyn home of his sister and brother-in-law as a stopover for convenience and to sleep there when in the area on business, does not establish a residence (see *Hammerman v Louis Watch Co., supra; Fromkin v Loehmann's Hewlett, supra).* Hopkins, J. P., Suozzi, Shapiro and Margett, JJ., concur.